# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

| | |
|---|---|
| ALEXIS DANIEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:26-cv-00048-CLC-CHS |
| | ) |
| THE UNIVERSITY OF TENNESSEE AT | ) JURY DEMAND |
| CHATTANOOGA, THE UNIVERSITY OF | ) |
| TENNESSEE BOARD OF TRUSTEES, MARK | ) |
| WHARTON, ANITRA BARRETT, LAURA | ) |
| HERRON, GRACIE THURSON, LELAND | ) |
| MALLOY, KEVIN RODRIGUEZ, COLETTE | ) |
| MURRAY, SARAH BUSEY, AND EVAN | ) |
| WILSON, | ) |
| | ) |
| Defendants. | ) |

---

## ANSWER OF COLETTE MURRAY AND SARAH BUSEY

---

Defendants Colette Murray ("Murray") and Sarah Busey ("Busey"), through counsel, answer the Complaint as follows:

1. Paragraph 1 is denied.

2. Paragraph 2 is denied.

3. Paragraph 3 is denied.

4. Paragraph 4 is denied.

5. As to Paragraph 5, it is denied that any state claims are asserted in this action against Murray and Busey and such defendants have no knowledge nor notice of any alleged claim with the Tennessee Division of Claims and Risk Management.

6. Paragraph 6 is admitted.

7. Paragraph 7 is admitted.

8. Paragraph 8 is admitted.

9. Paragraph 9 is admitted.

10. As to Paragraph 10, it is admitted that Murray and Busey were the coach and assistant coach of the UTC women's golf team when the alleged injury occurred.

11. As to Paragraph 11, it is admitted that the women's team was in competition during the first week of March 2025, that Plaintiff was not part of the traveling squad and that Plaintiff and another student named Nievas were expected to work out on their own at the training facility during the team's absence with strength and conditioning staff in charge. It is admitted that Defendant Rodriguez was not to be present for any workout on March 7, 2025 but strength and conditioning coach, Jerry, was expected to be present.

12. Paragraph 12 is admitted.

13. As to Paragraph 13, these Defendants have no independent knowledge of contact between Plaintiff and defendant Rodriguez but have no information to deny Paragraph 13.

14. As to Paragraph 14, Defendants have no knowledge as to the condition in the facility at the time Plaintiff and Nievas arrived.

15. Paragraph 15 is denied as stated.

16. Paragraph 16 is denied. Strength and conditioning staff handle workout protocol. Of course, no scholarship would be revoked for missing a workout.

17. As to Paragraph17, it is denied that it was a compulsory order from these Defendants for Plaintiff to perform " high – risk athletic maneuvers." The players were expected to participate in normal workout routines.

18. Paragraph 18 is denied.

19. As to Paragraph 19, it is admitted that Plaintiff texted to her teammates while traveling for competition. All other allegations of Paragraph 19 are denied. In fact, after the text Murray did contact Plaintiff by phone to check on her. Plaintiff had advised that she had hit her head on a bar of a barbell while raising up after bending down to put a water bottle down. In the phone conversation, Plaintiff said she had gone to the hospital to be checked out and was fine. She later sent the reports attached as Exhibit A from Parkridge Hospital that showed no significant injury.

20. As to Paragraphs 20 and 21, Murray and Busey have no knowledge of all the contact between Plaintiff and defendant Thurston.

21. As to Paragraph 22, Murray did have a telephone conference with Plaintiff and Plaintiff did not confirm that she had a "severe concussion diagnosis." She simply stated that she had hit her head hard while raising up after she put down a bottle of water, that she had gone to the emergency room at Parkridge Hospital, and had sent the reports which showed no significant injury.

22. As to Paragraph 23, it is admitted that Parkridge reports were sent and are attached. It is denied that Murray and Busey failed to follow up with UTC personnel regarding report of the injury. Again, defendants Busey and Murray are not aware of all contact between defendant Thurston and Plaintiff.

23. Paragraph 24 is denied as stated. Plaintiff simply informed defendant Murray that her parents were picking her up to return to Kentucky for spring break and she would not be returning to school until later; she was scheduled to graduate in May 2025.

24. As to Paragraph 25, Murray and Busey have no direct knowledge of contact between plaintiff and Thurston as to treatment of the head injury reported.

25. As to Paragraph 26 and 27, again Murray and Busey do not have sufficient information about contact between plaintiff and the UTC medical staff including Dr. Gary Wilkerson to admit or deny such allegations.

26. Paragraph 28 is denied. Such access was denied to all graduating players after the season. Plaintiff was graduating in May 2025 and completing her eligibility .

27. As the allegations of Paragraph 29, Murray and Busey deny that they were involved in or violated any alleged return to learn protocols.

28. Paragraphs 30, 31 and 32 are denied as stated. It is also denied that Murray and Busey did not have any concern about Plaintiff as Plaintiff was asked if they could do anything to assist her that she said she was returning to Kentucky and would handle things in Kentucky. In fact, she returned to campus as the golf season was over and she was graduating in May 2025. She was given a graduation gift. During this graduation time she had been seen driving around Chattanooga before such graduation and she said she was fine and nothing else was said about the incident nor any other subject matter as expressed in the Complaint on that occasion. Defendants Murray and Busey have had no contact with her since graduation except to give her golf balls and a tee gift.

29. Paragraphs 33, 34, 35 and 36 are denied.

30. As the allegations of Paragraphs 37 and 38 Murray and Busey have insufficient information to admit or deny what defendant Wilson may have done with respect to medical claims.

31. With respect to Paragraph 39, Murray and Busey incorporate their responses to the prior paragraphs.

32.     As the allegations of Paragraphs 40, 41, and 42, such allegations are directed only to UTC and Board of Trustees, and no response is made by defendants Murray and Busey to such paragraphs.

33.     With respect to Paragraph 43, Murray and Busey incorporate their responses to the prior paragraphs.

34.     As the allegations of Paragraphs 44 and 45, such allegations are directed only to UTC  and Board of Trustees and no response is made by defendants Murray and Busey to such paragraphs.

35.     With respect to Paragraph 46, Murray and Busey incorporate their responses to the prior paragraphs.

36.     As to Paragraphs 47 and 48, such allegations that are directed to Murray and Busey are denied. As previously stated, workouts by team members not on the traveling squad do occur, but that there are no high-risk mandated exercises. It is denied that Plaintiff was injured by reason of any equipment malfunction or negligent supervision nor instruction requiring her to perform any high-risk athletic maneuver as alleged in the Complaint. Rather, according to Plaintiff's own report of the event, she raised up and hit her head on an equipment bar. This would been self-inflicted, caused by Plaintiff's own action.

37.     As to Paragraph 49, those allegations are directed at defendants Wilson and Wharton, but Murray and Busey do offer the response that Plaintiff has not explained how any supervisory person who may been in the facility from the strength and conditioning staff that morning would have proximately caused her to raise up and hit her head on equipment after placing bottled water down or how such presence would have prevented her from such carelessness.

38.      As to Paragraph 50, it is denied that Tennessee Code Annotated § 9-8- 307 does not apply to these defendants. The remaining allegations of Paragraph 50 are denied as addressed to defendants Murray and Busey. In fact, it is exceedingly frivolous and egregious for Plaintiff to allege that Murray and Busey, who were not even present and who believed that a UTC strength and conditioning coach would be present, were guilty of conduct that "transcends gross negligence" for expecting members of the golf team to train and are somehow responsible if that athlete suffers a self-imposed injury by their own carelessness.

39.      Any allegation not admitted, denied, or explained is hereby denied.

40.      As affirmative defenses, Murray and Busey allege failure to exhaust administrative remedies, lack of standing, comparative negligence and lack of proximate cause.

41.      The Complaint fails to state a claim against defendants Murray and Busey under 42 USC section 1983 as the only claim alleged by the Plaintiff in Count III against these Defendants, seeking relief against Murray and Busey, as  no constitutional rights are implicated in Plaintiff's allegations and 42 USC  1983 does not apply to what is in essence a disguised AI generated personal injury claim barred by comparative negligence and lack of proximate cause of the acts of any third party.

42.      Plaintiff's action against Defendant is frivolous, unreasonable, and without foundation, justifying an award of attorney's fees to Defendant under 42 U.S.C. § 1988.

43.      Defendants reserve the right to amend their answer at the conclusion of discovery to raise any defenses or to clarify any defenses to the Plaintiff's claim.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants request that the Court dismiss the Complaint and grant Defendants their reasonable costs, attorney's fees, and

any other and further equitable or legal relief to which Defendants may be entitled. Defendants requests a jury trial on all issues triable by jury.

Respectfully submitted,

HORTON, BALLARD & PEMERTON, PLLC

By: /s/ William H. Horton
William H. Horton, BPR No. 1935
735 Broad Street, Suite 306
Chattanooga, TN 37402
(423) 826-2640

## CERTIFICATE OF SERVICE

I hereby certify that on this __11th__ day of May, 2026 an exact copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

HORTON, BALLARD & PEMERTON, PLLC

By: /s/ William H. Horton

EMERGENCY CENTER                          NAME: DANIEL,ALEXIS MARGUERITE
Parkridge Medical Center                  PHYS: Jolley,Stacey M  MD
2333 McCallie Ave.                        DOB: 09/15/2002   AGE: 22      SEX: F
Chattanooga, Tn 37404                     ACCT: F00119054156  LOC: F.EC
PHONE #: 423-493-1387                     EXAM DATE: 03/08/2025 STATUS: REG ER
  FAX #: 423-493-1541                     RADIOLOGY NO:
                              UNIT NO: F000599964


 EXAMS:                            Reason?:
002188321 CT HEAD W/O CONTRAST

     CT HEAD WITHOUT IV CONTRAST
   History: Headaches, hit head on or barbel one day prior.

   Comparison: None

   Technique: CT images were obtained from the skull base to the
   convexities. No intravenous contrast was administered.

   Findings:
   The brain parenchyma and white matter tracts are normal. The
   portions of the vascular structures visualized are normal. There
   is no evidence to suggest acute ischemia. There is no evidence
   for any mass effect, mass lesion, hemorrhage or hydrocephalus.
   Portions of the orbits and globes visualized are unremarkable.
   The visualized paranasal sinuses and mastoid air cells are
   clear. The calvarium is intact without concerning lesion.

    Impression:
    No acute intracranial abnormality.


    Dose reduction techniques utilized for this exam include ALARA
    (As Low As Reasonably Achievable) and AEC (Automated Exposure
    Control).

Re-Evaluation  MDM

Free Text MDM Notes
Free Text MDM Notes
The patient is a 22-year-old female, who presents to the ED complaining of headache and low so focus after hitting her head on a barbell yesterday.

The patient is alert and oriented x4, answers questions appropriately without any slurring speech.  The patient is able to ambulate with a steady gait, able to move all extremities without drift.

There is a bump on the mid forehead area.  GCS of 15. PERRLA.  EOMI.  No neurological deficits noted.

The CT of the head did not show any acute intracranial abnormality.

Informed patient of results of imaging done.

Instructed patient to follow-up with her PCP for further evaluation, especially if symptoms persist or do not improve with treatment.

Warning signs following a head injury or discussed and provided in the printed discharge papers.  Instructed patient to return to the ED for any worsening or concerning symptoms or if any of the warning signs following a head injury are present.

The patient indicated understanding to the instructions and information provided , and agreement to the treatment, discharge and follow-up plan.


Patient Discharge   Departure

Vital Signs/Condition
Vital Signs
First Documented:

|  | Result | Date | Time |
|---|---|---|---|
| Pulse Ox | 100 | 03/08 | 1447 |
| B/P | 130/81 | 03/08 | 1447 |
| B/P Mean | 97.2 | 03/08 | 1447 |
| Pulse | 82 | 03/08 | 1447 |

**roomies**
alexis daniel, Chloe (utc), Suga...

at workouts yesterday. cut my nose open and giant bump on my forehead. been having headaches, confusion, and not as much focus

so just incase, i'm here. just waiting on the results from my ct scan

Chloe (utc)

> alexis daniel
> i hit my head really hard on the barbells at workouts yesterday. cut my nose open and giant bump on my forehead. been having he ...

omg

alexis daniel
i was bending down to put my water bottle down, and stood up. didn't know the bar was there and just hit it really hard

Have you contacted Gracie

alexis daniel
yes

Mar 9, 2025

Chloe (utc)
Hello

Is someone in